119   30
122  645
123  517
119   30
30a  294
119   30
131  414
131  423
119   30
138   66
119   30
146  104
146  311
119   30
151  187
45a  616
119   30
62a  219
119   30
65a  549
119   30
165  293
119   30
77a  529
119   30
177  127
178  484
119   30
88a  239
119   30
f189  ²345
f189  ³345
f189  ⁴345
f189¹¹463
119   30
192  ¹⁰127

THE WASHBURN & MOEN MANUFACTURING COMPANY

v.

THE CHICAGO GALVANIZED WIRE FENCE COMPANY.

*Filed at Ottawa March 27, 1886.*

1. PRACTICE IN THE SUPREME COURT—*of a reversal and remandment, or a modification entered in this court.* Where a modification of a decree is deemed necessary by this court, on appeal or error, it is a matter of discretion whether it shall be made directly in this court by an order to be entered upon its records, or the cause shall be remanded, with specific directions, to the court below, to make the modification. But in either case it is proper that the decree below be first reversed.

2. PRACTICE—*in case of reversal and remandment—of the further proceedings to be had in the trial court.* Where a decree is reversed and directed to be modified, the effect of such reversal is not necessarily to open the whole case for rehearing. Its effect in that respect will depend entirely upon the modification of the decree made or directed to be made.

3. A direction in an order of reversal that one part of a decree be modified, is, by necessary inference, an approval of that part omitted from the direction, and is equivalent to an order of affirmance of the same.

4. The statute does not require that specific directions shall be stated in an order reversing a decree and remanding a cause, but under our practice it is sufficient if a modification of the decree be specifically directed in the written opinion of this court; and it is the duty of the court below to examine such opinion, and conform its action to it.

5. Where a decree is reversed, and the cause remanded, with directions to the trial court to proceed in conformity with the opinion thus filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by subsequent amendment of the pleadings, or by the introduction of additional evidence, or both, it is the duty of the trial court to allow such amendments and further evidence, the same as though the cause was before the court for the first time, and then new questions of law and fact may arise.

6. But where the cause is remanded with direction to make a specific modification of the decree, not requiring any change in the pleadings or the introduction of additional evidence, but only with the view to have the decree conform to the case made by the record, nothing remains to be done but to make such modification and then execute the decree. ·

7. Where a case is remanded to a lower court with specific directions to modify the decree therein, such court is not authorized to include anything in the modified decree which is not either actually expressed in the language

of the opinion directing the modification, or necessarily implied from that language.

8. A decree required an account to be taken of barbed wire manufactured and sold under an agreement or license named in the bill. Pending an appeal, a new agreement or license was made providing for the payment of different royalties. The decree was reversed, and cause remanded with directions to modify the same in a certain respect. When the cause went back to the trial court, that court refused to allow the filing of a supplemental answer setting up the new license: *Held*, no error, as the rights of the parties under the new license were not in any manner affected by the decree.

9.. SAME—*order construed as a partial reversal.* A clause in an opinion of this court, thus: "For the purpose of a modification of the decree in the manner above indicated, the decree will be reversed and the cause remanded," under a familiar rule of construction means that the decree was reversed and the cause remanded only for the purpose of such modification, and excludes all inference of any other purpose.

10. CHANCERY—*further evidence after case heard.* If a party in a suit in chancery has other evidence upon a point in the case before or at the time announced for the rendition of a decree, he should apply for leave to introduce it; and in such case the court might hear it, even after the oral announcement of the decree. If such evidence is not discovered until after the decree, a bill of review may be filed, showing the exercise of proper diligence to have discovered it before. If the party allows the case to come to this court and be heard without first obtaining such evidence, he will have no right to introduce the same after a partial reversal, and remandment of the cause with specific directions as to what the decree shall be.

11. FORMER ADJUDICATION—*in the Supreme Court—upon what questions conclusive.* Where a question either of law or fact has been decided by this court in a case properly brought before it, the same question can not be again raised in that case, except upon petition for rehearing.

12. Where a case has been heard in the trial court, reviewed in this court, and remanded to the trial court with directions as to the decree it shall enter, on a subsequent appeal to this court errors can not be assigned for any cause that existed prior to the former decision in this court.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

This case was before this court at its September term, 1883, and the decree below was reversed and the cause remanded. Reference may be had to the printed report for a full statement of the case. After the cause was remanded, the Supe-

rior Court, at its May term, A. D. 1884, modified its former decree. An appeal was taken from the decree, as modified, to the Appellate Court for the First District, and that court affirmed the decree of the Superior Court. The present appeal is from that affirmance.

The facts necessary to an understanding of the questions discussed sufficiently appear in the opinion.

Mr. W. C. Goudy, for the appellant:

When a chancery cause is remanded, on reversal, for further proceedings, amendments of the pleadings may be allowed and further evidence heard. *Chickering* v. *Failes*, 29 Ill. 301.

When remanded with specific directions to dismiss the suit, or do some other act, the court below has no power to do anything but carry out the specific direction. *Boggs* v. *Willard*, 70 Ill. 315.

Such directions are not given except the evidence is clear and satisfactory as to the proper judgment. *Winchester* v. *Grosvenor*, 48 Ill. 516.

As to the effect of a reversal and remanding of the cause, with or without directions, in general, see *Edwards* v. *Evans*, 61 Ill. 492; *Wadhams* v. *Gay*, 83 id. 250; *Mohler* v. *Wiltberger*, 74 id. 163; *Blatchford* v. *Newberry*, 100 id. 485; *Mitchell* v. *Bannon*, 10 Bradw. 340.

The court erred in refusing leave to file the supplemental answer, and to hear evidence as to the number of tons manufactured and sold yearly by Haish prior to the time the decree was entered, May 15, 1884, or as to the matters which occurred since the former trial.

Mr. Geo. S. House, and Mr. Geo. C. Fry, for the appellee:

A decree can not be modified in this court without first reversing it, or at least the erroneous part. *Hunter* v. *Hatch*, 45 Ill. 178; 109 id. 71; Rev. Stat. sec. 81, chap. 110.

Duty and power of the court below on reversal and remanding with directions: *Wadhams* v. *Gay*, 83 Ill. 250; *Ogden*

v. *Bowen,* 4 Scam. 301; *Chickering* v. *Failes,* 29 Ill. 294; *Hough* v. *Harvey,* 84 id. 308; *Henry* v. *Davis,* 13 W. Va. 230; *Cothran* v. *Knox,* 17 S. C. 207; *Choteau* v. *Allen,* 74 Mo. 59; *Webb's Heirs* v. *Galloway,* 1 Litt. 79; *Keller* v. *Lewis,* 56 Coll. 466; *Soule* v. *Dawes,* 14 id. 249; *Gale* v. *Butler,* 35 Vt. 449; *Miner* v. *Medbury,* 7 Wis. 100; *Watson* v. *Avery,* 3 Bush, 651.

The lower court is bound by the decision on a general reversal, where no specific directions are given. *Hollowbush* v. *McConnell,* 12 Ill. 203; *Boggs* v. *Willard,* 70 id. 315; *Wadhams* v. *Gay,* 83 id. 250.

A judgment entered in the lower court in pursuance of directions on reversal, is but the judgment of the Supreme Court. *Corning* v. *Troy Iron Works,* 15 How. 451; *Choteau* v. *Allen,* 74 Mo. 59; *Jewett* v. *Dringer,* 31 N. J. Eq. 586; *Cothran* v. *Knox,* 17 S. C. 207.

The only questions that can be raised on the record, on this appeal, are those which have arisen since the mandate of this court was issued. All else is *res judicata. Hollowbush* v. *McConnell,* 12 Ill. 203; *Reid* v. *West,* 70 id. 479; *Kingsbury* v. *Buckner,* id. 515; *Clayes* v. *White,* 83 id. 540; *Hough* v. *Harvey,* 84 id. 310; *Diversy* v. *Johnson,* 93 id. 547; *Smith* v. *Brittenham,* 94 id. 624; *Walker* v. *Doane,* 108 id. 246; *Newberry* v. *Blatchford,* 106 id. 594; *Cook* v. *Morton,* 61 id. 285; *Ogden* v. *Larrabee,* 70 id. 512.

If new evidence is discovered after the hearing and before the entry of the decree, a petition for rehearing is proper. Daniell's Ch. Pr. 1477; 2 Maddock's Ch. *454; *Yates* v. *Monroe,* 13 Ill. 212.

Rehearing is not allowed if evidence is merely cumulative, (*Gregg* v. *Gear,* 3 Gilm. 2, *Boyden* v. *Reed,* 55 Ill. 458, *Hall* v. *Fullerton,* 69 id. 448,) or if proper diligence was not used to produce it on hearing. *Humphreys* v. *Allen,* 100 Ill. 511.

After decree entered, and before appeal, a bill of review will lie for newly discovered evidence not cumulative, there being no negligence. Mitford's Eq. Pl. *85, note; *Boyden* v.

*Reed,* 55 Ill. 458; *Walker* v. *Douglas,* 89 id. 425; *Livingston* v. *Hubbs,* 3 Johns. Ch. 124; *Dixon* v. *Graham,* 16 Iowa, 310; *McGregor* v. *Gardner,* id. 538; *Kinsell* v. *Fieldman,* 28 id. 499.

Upon discovery of new evidence after decree and appeal, relief might have been obtained by petition to the Supreme Court. *Hall* v. *Fullerton,* 69 Ill. 448; *Hough* v. *Harvey,* 84 id. 308; *Smith* v. *Brittenham,* 94 id. 624; *Kingsbury* v. *Buckner,* 70 id. 514; *Railroad Co.* v. *Simpson,* 73 N. C. 316; *Lyon* v. *Merritt,* 6 Paige, 473.

Courts will not hear additional evidence when the cause has been decided on appeal or error. *Coen* v. *Funk,* 26 Ind. 293; *Rice* v. *Casey,* 4 Ga. 570; *Blight* v. *McIlvoy,* 4 T. B. Mon. 146; *Lewis* v. *Morton,* 6 id. 138; *Ryerson* v. *Eldred,* 18 Mich. 492.

Mr. Justice Scholfield delivered the opinion of the Court:

The first, and, in our opinion, the controlling, question, arising upon this record is, whether, when the case was here at a former term, (109 Ill. 71,) it was remanded for a rehearing, or only to modify the decree of the Superior Court in conformity with specific directions then given.

In cases where a modification of the decree below is deemed necessary, it is discretionary whether this court shall, by an order to be entered on its own records, make the modification, or whether it shall remand the cause to the lower court, with specific directions to that court to make the modification. (Rev. Stat. 1874, sec. 81, chap. 110.) In either case it is proper that the order of this court be, first, that the decree below be reversed. (*Hunter* v. *Hatch,* 45 Ill. 178.) But whether the effect of such order of reversal shall be to open up the case for rehearing, will depend entirely upon the modification of the decree made or directed to be made, for, the only purpose of the order of reversal being that the modification shall be made, the substantial rights of the parties

to the record, so far as concerns any question now before us, are precisely as if, from the moment of the entry of the judgment in this court, the decree actually read as it would read after making the record entries in the different courts, essential to the modification. And since the direction that one part of a decree be modified, is, by necessary inference, an approval of that part omitted from that direction, the substantial rights of the parties to the decree are not perceptibly different from what they would be were it expressly ordered, in the formal entry upon the record, that such omitted part of the decree is affirmed. No statute requires that the specific modification directed shall be embodied in the formal order of court entered of record by the clerk of this court, and it is conformably with our practice, and sufficient, if the modification be specifically directed in the written opinion of the court filed in the case. And so it is held that it is the duty of the lower court to examine the opinion, and conform its action to it. *Wadhams* v. *Gay,* 83 Ill. 253; *Boggs* v. *Willard et al.* 70 id. 315; *Hough* v. *Harvey et al.* 84 id. 308.

The specific directions here given are all in the written opinion of the court, and the meaning intended to be conveyed by the language employed for that purpose will be better comprehended by restating the questions under consideration to which that language was applied.

The tenth condition in the license issued by appellant to appellee has this clause: "And the royalty to be paid under this license shall not be greater than that charged to any other party licensed after the first day of January, A. D. 1881, under said several letters patent" named in the license; and that in case a license should be given to any party at a less royalty, "then and thereafter the royalty to be paid under this license shall be the same as such reduced royalty." The bill was filed for the purpose of obtaining the specific performance of this condition, alleging a certain settlement made subsequent to the first day of January, A. D. 1881, by appel-

lant, with Jacob Haish, under the terms of which Haish was licensed to manufacture barbed fence wire to the extent of 4000 tons annually, free of royalty, under appellant's patents, and the bill prayed allowance to appellee of the benefit of all reduction of royalty made to Haish. The allegation was put in issue by answer. Evidence was heard, and the court decreed as prayed in the bill.

The opinion, after giving a history of the settlement with Haish, proceeds thus: "The main controversy in this case is upon a question of fact as to what was the real character of this transaction" (that between appellant and Haish,) "of the 26th of July, 1881. The contention of appellant is, that the real arrangement with Jacob Haish was a mere settlement of a troublesome litigation upon a basis of an allowance to Haish of the right to manufacture 4000 tons of barbed fence wire per annum free of royalty, with an abatement of twenty-five cents per hundred pounds upon the royalty exacted from other licensees, upon his annual manufacture above 4000 tons, up to 8000, the arrangement being concealed under a pretended purchase of Haish's patents, payment for which was to be made, practically, in a rebate of the royalties nominally exacted from Haish under the license issued to him." A preliminary question with regard to the admissibility of parol evidence exhibiting the various negotiations between the parties, leading up to the settlement, is then discussed, and such evidence held admissible, and then this question is discussed, and the conclusion thereon is stated in these words: "The court below found that the purchase of Haish's patents, and the Stevens machine patent, was a secondary matter, and was used to give the appearance of a consideration to what was in reality a license, free of royalty, for the manufacture of 4000 tons, yearly, of barbed wire, and of 4000 more tons at a less rate, by twenty-five cents per hundred pounds, than to the other licensees, and so a reduction to that extent, of which appellee had a right to avail itself

under its license. Without further remark upon the evidence, we state as our conclusion, upon its examination, that we do not find reason sufficient for disturbing the decree on the ground of the finding of the court not being warranted by the testimony." Another point is then considered and decided which is not pertinent now, after which the opinion comes to an objection urged by appellant's counsel, that the decree reduces appellee's royalty to a less amount than that of Haish, and after stating the ground of this objection, it proceeds: "Hence it is said, that on the theory of the court below, and upon the principle of the equality of royalties, appellee should be exempt from royalty as to two-fifths of its tonnage, and subject to a payment of fifty cents on the hundred pounds royalty on the second two-fifths of its tonnage, and a royalty of seventy-five cents per hundred pounds on the last one-fifth, but that instead of doing so, the decree gives to appellee the whole amount of its tonnage free from any royalty. There is force in this view, and we think that if Haish manufactured up to the full limit of his tonnage, it would have to be acceded to. He certainly then would have some royalty to pay, and the reduction of appellee's royalty to an equality with that of Haish would not exempt appellee from payment of any royalty at all. There can not be the claim that each licensee was entitled to an equal amount of tonnage. There was to be a limitation as to tonnage, and the several amounts to be allowed to each licensee were to be determined by the licenser; but Haish was not bound to manufacture more than 4000 tons yearly, and to the extent of 4000 tons yearly he had a free license,—whether he would manufacture in excess of that was optional with him. The proof shows that up to the time of the hearing in the Superior Court, his yearly manufacture did not exceed 4000 tons, so that upon what he manufactured he paid no royalty, upon the theory of the decree, and so far the decree was right in exempting appellee from the payment of royalty; but if in

the future, subsequent to the hearing, Haish should manufacture in excess of 4000 tons yearly, he would have to pay royalty, under the provisions of his license, which, if he manufactured to the limit of his license, would be fifty cents per hundred pounds on the second two-fifths of his manufacture, and seventy-five cents per hundred pounds on the last one-fifth. As respects, then, any future manufacture by Haish which might be in excess of 4000 tons yearly, we are inclined to think appellee should be required to pay the same proportionate royalty as Haish would have to pay, so that there should be the same ratio of royalty to tonnage manufactured in the case of appellee as in that of Haish, and that in the respect of any such future manufacture the decree should be modified accordingly." The opinion then discusses whether Elwood was a necessary party, holding that he was not, after which it concludes thus: "For the purpose of a modification of the decree in the manner above indicated, the decree will be reversed, and the cause remanded for further proceedings in accordance with this opinion. Each party will pay its own costs in this court.—*Decree modified.*"

We concede that, if taken alone, the words, "we are *inclined to think* appellant should be required to pay the same proportionate royalty as Haish," imply a mere inclination or predisposition to decide, and not an actual decision, and therefore that the question is still suspended and open to further discussion and consideration; but, taken in connection with succeeding language, it must be clear to every one that these words were intended but as an expression of doubt and hesitancy in the process of reasoning by which the conclusion was reached that induced the decision then made. The language expressing what the court directs,—that the decree shall be modified in accordance with the inclination thus expressed,—is free from doubt, and is unqualified and absolute.

We can add nothing to make more perspicuous the language, "for the purpose of a modification of the decree in the

manner above indicated, the decree will be reversed and the cause remanded," etc. We understand, and we do not know that it is at all controverted, that this, under a familiar rule of construction, clearly means that the decree was reversed and the cause remanded only for the purpose of such modification, and thus excludes all inference of any other purpose. Assuming that we are not in error in this, it was the duty of the Superior Court, in the performance of which it had no discretion, to modify its decree as thus directed; and it is, in our opinion, a matter of form rather than of substance, so far as any question here is concerned, that the order of this court, as the law then was, had to be transmitted to the Superior Court through the Appellate Court, necessitating a reversal of the former judgment of affirmance of the last named court. Notwithstanding this circumlocution, the order of this court operated directly upon the Superior Court.

The next question is: Did the Superior Court obey the order of this court? After the mandate of this court was presented, that court entered a decree, the second clause of which is as follows:

"*Second*—That the said complainant shall be required to pay said defendant, upon barbed wire manufactured and sold by it under the license from said defendant to said complainant, referred to in the bill of complaint herein, on and after the 23d day of October, 1882, no greater proportion of royalty in any one year than the amount of royalty paid in the corresponding year by Jacob Haish to defendant, on barbed wire manufactured and sold by said Haish under the license from said defendant to said Haish, in the bill of complaint herein referred to, in excess of 4000 tons of annual manufacture allowed to be manufactured and sold by said Haish free of royalty, as found and adjudged in the decree heretofore entered herein, shall bear to the entire amount of barbed wire manufactured and sold by said Haish under the license of said Haish in the corresponding year, so that there shall be

the same ratio of royalty to tonnage manufactured in case of complainant as in that of·Haish."

This, it will be observed, embodies the idea of modification expressed in the opinion, in almost, if not entirely, the same language.

It is objected that it is.not specific enough; that it was not intended to use language in the opinion with the precision required in a decree; that nothing more was there intended than to lay down a general rule, leaving the court below to adopt such provisions as would be equitable between the parties. We concede that directions by appellate courts to trial courts, in particular cases, as expressed in written opinions, are, ordinarily, in general terms, giving the substance, in outline, simply, of what is required to be done, and leaving matters of detail to the trial courts; but we understand the rule to be, when a case is remanded to the lower court, with specific directions to modify the decree therein, that the lower court is not authorized to include anything in the modified decree which is not either actually expressed in the language of the opinion directing the modification, or necessarily implied from that language. The reason is obvious. The lower court is not acting of its own motion, but in obedience to the order of its superior. What that superior says it shall do, it must do; and that alone. Where the doing of one thing necessitates the doing of others, as necessary incidents, the order that they shall be done is implied in the order to do that to · which they are incidents.

The question here is, does the decree direct that to be done which the opinion says shall be done, or does it direct that less or more, or something different, shall be done? It is impossible for us to hold that the same language means one thing in the opinion, and another and different thing in the decree; nor can we hold that it is error in a decree to not define a duty enjoined, with more precision of language than is employed in the opinion of the court directing that such

duty shall be enjoined by the decree. The opinion does not leave it to the Superior Court to thereafter ascertain whether appellee was exempt from the payment of royalty up to the date of the hearing, nor to ascertain from what period the inquiry should co mmence whether Haish had manufactured, annually, more than 4000 tons of barbed wire, as is assumed in the objections to the modification of the decree. The language which we have quoted from the opinion, is, expressly, that the decree below finding that Haish had not, up to the date of the hearing, manufactured more than 4000 tons of barbed wire annually, under his license from appellant, and that therefore appellee was exempt from the payment of any royalty from the date of the license of Haish to the date of the hearing, was sustained by the evidence, and was right; and that the decree should be modified, so that if, in the future, subsequent to the hearing, Haish should manufacture in excess of the 4000 tons, annually, and thus have to pay royalty on such excess, appellee should pay on its manufacture the same ratio of royalty to tonnage. To have fixed in the decree, therefore, any other date than that of the hearing from which to take the account of the future manufacture of Haish, would have been in direct violation of the direction in the opinion; and the same would be the result did the modified decree require, as counsel contend it should, that appellee should pay a royalty on its manufacture in the ratio of exemption and liability fixed in the contract with Haish, without regard to whether Haish should manufacture in excess of 4000 tons, so as to be obliged to pay royalty, or not. The language of the opinion, in this respect, is free from doubt. It directs that the decree shall require appellee to pay royalty as Haish, by manufacturing in excess of 4000 tons, annually, should become liable to pay royalty, and then to pay, in the same ratio of royalty to tonnage, on its manufacture that Haish would have to pay on his, and thus completely excludes the other theory.

When the case was here before, all the objections now urged to the modified decree were proper subjects of discussion and consideration. So far as then deemed important, they were discussed and considered with such care and thoroughness as was thought necessary, and the opinion expressed the result. The opinion was then obnoxious to the same objections now urged against the modified decree, and the more important of them were urged by the counsel now representing appellant, in an exhaustive and able petition for rehearing. The court, however, failing to appreciate the force of the objections as they were felt by counsel, adhered to the views expressed in the opinion. We are not now at liberty to review and overrule any former ruling in the case. It is well settled, and, as we understand, not denied by counsel for appellant, first, where a question, either of law or of fact, is decided by this court in a case properly before it for such decision, the same question can not be again raised in that case, except upon petition for rehearing; second, where a case has been heard in the trial court, reviewed in this court, and remanded to the trial court with directions as to the decree it shall enter, on a subsequent appeal to this court errors can not be assigned for any cause that existed prior to the former decision in this court. *Ogden* v. *Larrabee*, 70 Ill. 510; *Reed* v. *West*, id. 479; *Kingsbury* v. *Buckner*, id. 514; *Newberry* v. *Blatchford*, 106 id. 590; *Hook* v. *Richeson*, 115 id. 431.

After the case, upon being remanded, was redocketed in the Superior Court, appellant asked leave to file a supplemental answer, setting up that "on or about the 18th day of December, A. D. 1883, an agreement was entered into and made by the parties to this suit, in and by which a new license was issued by the defendant to the complainant, to cover all barbed wire manufactured or sold from and after the 1st day of May, 1883, and it was then and there agreed that royalties should be paid upon all such wire so manufactured and sold since the 1st day of May, 1883, under and according to the pro-

visions of the new license so granted as aforesaid; and an agreement in writing was then and there made between the parties, by which it was expressly agreed, that in case the Supreme Court of Illinois, where this cause was then pending on appeal, should reverse the same, and remand the same to this court, and should find that the complainant was entitled to any of the relief prayed for in the original bill, this court should not decree the complainant any relief for royalties accrued under the complainant's license, mentioned in the original bill of complaint, upon barbed wire manufactured and sold by complainant thereunder on or after May 1, 1883, and that no relief should be given to the complainant after April 30, A. D. 1883." The court refused to allow it to be filed, and this ruling, also, counsel insists was erroneous. We perceive nothing objectionable in this respect. By reference to the second clause of the decree before herein quoted, it will be seen the account required to be taken is of barbed wire manufactured and sold under the license issued by appellant to appellee, "referred to in the bill of complaint herein;" and the amounts paid on account of royalty, which the preceding clause of the decree directs shall be repaid by appellant to appellee, were paid under the same license. The rights of the parties, under the new license, are an entirely different thing, and not within the contemplation of the decree. In taking the account directed, the master in chancery is confined to transactions under the license described in the bill, and will, of course, reject evidence of any transaction under this new license.

It appears that the original hearing of the case was commenced at the June term of the Superior Court, A. D. 1882, but that it was adjourned over, and the final hearing was had, and the original decree was rendered, on the 23d day of October, A. D. 1882. Counsel for appellant contend that the only proof before the court, on that hearing, as to the number of tons of barbed wire manufactured by Haish after July 26,

1881, appears in the deposition of Haish taken May 26, 1882, which was as to the number of tons manufactured prior to the 1st day of April, A. D. 1882,—four months before the expiration of the first year of his license; and counsel, therefore, after the case was remanded, and before the modified decree was entered, moved to place the case upon the trial calendar of the court, so that he might introduce evidence to prove that Haish, in fact, manufactured more than 4000 tons of barbed wire in the first year of his license, and that between the 26th day of July, A. D. 1882,—the first day of the second year of his license,—and the 1st day of May, 1883,—the date from which it was alleged, in the supplemental answer offered to be filed, that appellee was acting under a new license from appellant,—Haish manufactured more than 3700 tons, and sold more than 3180 tons, and that during the remaining three months of the second license year he manufactured about 1100 tons, and sold about 1150 tons. The motion was supported by an affidavit stating that appellant would be able to prove these allegations in regard to Haish's manufacture, and also by certain stipulations of the parties in regard to the re-trial of the case. The court refused to place the case upon the trial calendar, and thereafter modified the decree, as before stated. In the view we have taken of the duty of the Superior Court, under the former opinion, this ruling was right.

The stipulations may be dismissed with the single remark, that the action they contemplated was upon the hypothesis that this court should remand the case for re-trial.

It will be observed that the evidence expected to be introduced, in the event of the case being placed upon the trial calendar, was not for the purpose of taking an account pursuant to the decree, but solely for the purpose of inducing the Superior Court to change that part of its former decree which found that Haish had not manufactured above 4000 tons of barbed-wire per annum after the 26th of July, 1881, and up to the date of the decree; and so the question is thus

presented, whether the Superior Court ought to have gone into an inquiry to impeach that part of the decree, or, perhaps, rather to have proceeded just as if no decree, in that respect, had ever been entered.

At the risk of being unnecessarily tedious in consequence of repetitions, we here transcribe so much of the finding of the court, recited in the decree, as is pertinent to the question,—the decree bearing date, it will be remembered, October 23, 1883. It found and recited that "Jacob Haish has, since said 26th day of July, A. D. 1881, manufactured and sold barbed fence wire, under his said license from said complainant, but that the amount of barbed fence wire manufactured and sold by said Haish has not exceeded the amount of 4000 tons per annum, and that the said Jacob Haish has, from and since said 26th day of July, A. D. 1881, in fact paid no royalty to the said defendant upon the barbed fence wire manufactured and sold by him, under his said license, up to the date of the hearing hereof." And further, that "complainant is also entitled to recover from said defendant all moneys paid to defendant by complainant, as royalty, under complainant's said license, upon barbed fence wire manufactured and sold by complainant since said 26th day of July, A. D. 1881,"—and the decree then proceeded in conformity with that finding. If appellant had other evidence before or at the time that it was announced that this decree would be rendered, as its counsel claims it now has, to prove that Haish had, in fact, manufactured more than 4000 tons per annum between the 26th day of July, A. D. 1881, and the date of the decree, he should have then applied to the court for leave to introduce that evidence. It would have been competent for the court to have heard it, even after the oral announcement of the decree intended to be rendered, but before the actual entry of the decree. (*Hughs et al.* v. *Washington et al.* 65 Ill. 245.) If the evidence was not discovered until after the decree was entered, a bill of review might have been filed

on that ground before that case was brought before this court; but it would have been necessary to have then shown that the party could not, by the exercise of reasonable diligence, have discovered it before. (*Humphreys* v. *Allen,* 100 Ill. 511; *Boyden* v. *Reed,* 55 id. 458.) But without making any effort to introduce additional evidence upon the subject, appellant sought his remedy by appeal; and when the case came before us, as has been before shown, we found that the evidence sustained this finding in the decree, and thereupon then said: "The proof shows that up to the time of the hearing in the Superior Court, his (Haish's) yearly manufacture did not exceed 4000 tons, so that upon what he manufactured he paid no royalty, upon the theory of the decree, and so far the decree was right in exempting appellee from the payment of royalty,"—and the case was, as before shown, reversed and remanded for the purpose of modifying the decree in another respect. If it had been intended to keep the question open, it should have been so said in the opinion. If there shall be difficulty in taking the account under the modified decree,— which we do not anticipate,—that difficulty will result from the direction in the opinion of this court in regard to the modification to be made.

We concede, that where a decree is reversed, and the cause is remanded with directions to the trial court to proceed in conformity with the opinion then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by subsequent amendments of the pleadings, or the introduction of additional evidence, or both, it is the duty of the trial court to permit the cause to be redocketed, and then to allow amendments to be made and evidence to be introduced, on the hearing, just as if the cause was then before the court for the first time; and under such a state of facts, upon the second hearing, new questions of law or fact may arise as to which no opinion was or could have been expressed in the written opinion of this court, pursuant to which

the former decree was reversed, and the cause remanded. But where, as here, the cause is remanded with direction to make a specific modification of the decree, not requiring any change in the pleadings or the introduction of additional evidence, but only with the view to have the decree conform to the case made by the record, nothing remains to be done but to make that modification, and then execute the decree. *Wadhams* v. *Gay*, and *Hough* v. *Harvey, supra*.

We do not feel disposed to make any order of reversal on account of the cross-error assigned in regard to the approval of the master's report. The case seems to have been appealed before that question was reached.

The decree is affirmed.

*Decree affirmed.*

When this case was considered, and the decision agreed upon, immediately after the oral argument by counsel, the record was assigned to the late Justice DICKEY to prepare the opinion, but no opinion having been prepared in his lifetime, the record was re-assigned at the November term, 1885.