JOSEPH T. TORRENCE *v.* SUSAN M. SHEDD *et al.*

and

ELIZABETH L. NIX *et al. v.* JOHN B. BROWN.

*Opinion filed April 24, 1903.*

1. RES JUDICATA—*trial court is bound by Supreme Court's directions.* If the Supreme Court, in its judgment of reversal, conclusively determines the rights of the parties and directs the entry of a particular decree, the trial court has no power, after the entry of such decree, to re-open the case upon a petition filed ostensibly to enforce the decree, re-litigate questions already settled and enter a different decree.

2. LIS PENDENS—*decree may be enforced without the consent of purchasers pendente lite.* As to any interests acquired from a litigant *pendente lite* the court may enforce the decree, whether the owners of the titles so acquired consent or not.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

M. L. THACKABERRY, for appellants.

CHARLES M. OSBORN, and SAMUEL A. LYNDE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Joseph T. Torrence commenced this suit in the superior court of Cook county on August 29, 1881, alleging that he was the owner of an undivided one-third of the

north quarter of fractional section 7, township 37, range
15, in Cook county, on which was laid out Bowen's addi-
tion to South Chicago, and asking for partition of the
premises. A large number of persons were made defend-
ants, among whom were Charles H. Nix, one of the ap-
pellants, and Charles Forster, and the appellee John B.
Brown. The superior court, upon a hearing, entered a
decree dismissing the bill for want of equity. Torrence
appealed to this court, and the decree was reversed and
the cause remanded for further proceedings in conform-
ity with the opinion then filed, leaving all questions
arising upon the record' open for further hearing upon
the rehearing in the superior court, except certain ques-
tions disposed of by said opinion and eliminated from
the case. (*Torrence* v. *Shedd,* 112 Ill. 466.) The cause was
re-instated in the superior court, and after having been
removed to the Circuit Court of the United States the
bill was again dismissed for want of equity. On appeal
to the Supreme Court of the United States that decree
was reversed, with directions to remand the cause to the
superior court. The cause was again docketed in the
superior court, and after another hearing the bill was
again dismissed for want of equity. From said decree
of the superior court an appeal was again prosecuted to
this court. (*Torrence* v. *Shedd,* 156 Ill. 194.) It was then
held that the defendants were entitled, by virtue of a
certain contract, to a conveyance of the one-third inter-
est claimed by Torrence, but that upon his conveyance
to them he would be entitled to a conveyance of seven-
teen acres out of said north quarter, to be selected and
agreed upon by the parties. The decree dismissing the
bill for want of equity was reversed, and the cause was
remanded to the superior court with the following direc-
tions: "To permit the appellant to file an amended bill
within some time to be fixed by the court, therein asking
for a specific performance of the contract of March 8,
1877, and therein offering to convey to appellees the title

to the one-third interest acquired from the heirs of Edward DeSeille in exchange for a conveyance of seventeen acres by appellees, to be selected by them and appellant or Sorin, or therein praying for a partition of the undivided seventeen acres out of the north quarter of said section in accordance with the usual practice in partition cases; and with further directions that in case such amended bill shall not be filed within the time so limited, the decree of dismissal hereby reversed shall be re-entered and stand as the final decree in the cause." The complicated facts out of which that decision arose will be found in the opinions delivered on former appeals. That decision was a final adjudication of the rights of the parties in the land, and gave to Torrence a right to avail himself of the privilege to file an amended bill and have a decree for the seventeen acres, or, in the alternative, to have the decree of dismissal re-entered.

When the case was again re-instated in the superior court under the mandate of this court, Torrence chose to file the amended bill, and did so on September 14, 1895, praying the court to decree a specific performance, by defendants, of the contract; that he should have seventeen acres of the said north quarter, as provided in the contract; that the court should appoint some person to take title from him, for the use of the defendants, to the undivided one-third interest to which he held title, except the seventeen acres to which he was entitled, and that the seventeen acres should be set off to him. On a hearing of the issues under the amended bill the court entered a final decree on July 7, 1896, reciting that Torrence held title to an undivided one-third part of the property under Edward Sorin; that before Sorin acquired title he agreed with Haines, who then held the remaining two-thirds and under whom the defendants held title, that if Sorin should acquire said undivided one-third he would transfer it to Haines, and would receive as compensation therefor a complete title in fee for seventeen

acres of the land, to be selected by them, and that Torrence held title for the use of the defendant John B. Brown, who is now the appellee, and had conveyed his interest to him. The court found that it was impossible to select seventeen acres in one body without injury to the numerous holders of specific parcels; that the seventeen acres was 12.76 per cent of the whole, and was the proportion of every separate holding to which Brown was entitled. It was decreed that the several holders of specific parcels should convey to Brown, by clear and unencumbered title, 12.76 per cent of their respective separate parcels; that there should be set off to each of the defendants the remainder of their separate holdings, which was 87.24 per cent thereof; that the master in chancery should be authorized, on behalf of the defendants, to make in their names all deeds necessary to effect the partition, and that as to those several holdings which could not, with due regard to the equities of the parties, be divided between Brown and the defendants owning the same, they should be sold and the proceeds of the sales divided in proportion to the interests of the parties. Leave was given to the defendants to make claims before the master for re-imbursements for taxes and improvements, and the court reserved the right to appoint commissioners, upon the coming in of the master's report, in case the parties could not agree. This decree was not appealed from, and settled the rights of the parties in accordance with the decision of this court and remains in full force and effect. The master filed a report December 27, 1897, that Charles H. Nix, one of the appellants, claimed title to certain lots in the addition, but had suffered or procured the title to the same to be so clouded or encumbered that it was not within the power of the court to cause to be made to the appellee Brown a complete title of the portion of the same which Brown was entitled to have set off and conveyed to him, and that Nix had not complete title to the several lots.

Nothing further seems to have been done respecting these lots until July 29, 1899, when the appellee John B. Brown, to whom the decree ordered the seventeen acres to be set off and conveyed, filed his petition alleging that Torrence, the original complainant, was dead; that petitioner was entitled to the benefit of the decree and was able and willing to perform it, but that the appellant Charles H. Nix was not able to perform it on his part, and therefore petitioner was entitled to have the entire one-third of the Nix lots set off to him. The petition alleged that by virtue of the decree the petitioner became entitled to be vested with every right, title or interest which was held by appellant Charles H. Nix or acquired *pendente lite* through him; that neither the appellant Elizabeth L. Nix, wife of Charles H. Nix, nor the appellant Catherine Miesch, his sister, nor said Charles H. Nix himself, who were made defendants to the petition, held any right to or interest in the property which could be asserted against the rights of the petitioner; that said Elizabeth L. Nix and Catherine Miesch were holding mere clouds upon the title which arose after the court had acquired full jurisdiction and control over every right or title, legal or equitable, in the property, including the possession thereof; that the claims were made by them in collusion with Charles H. Nix, and were fraudulent in fact as well as in law, and made to embarrass the proceeding; that Nix had claimed title to the property by a deed from Charles Forster and wife to Elizabeth L. Nix, and by a deed from her to himself; that the interest of Charles H. Nix in the lots had been levied upon and sold under an execution issued from this court on a judgment for costs after the commencement of the original suit; that Nix had purchased the title under the sale and caused it to be conveyed to Elizabeth L. Nix, paying the consideration himself; that Charles H. Nix neglected to pay the taxes on the premises, and they were sold for taxes and the title under that sale had been

conveyed to Catherine Miesch; that during the supple-
mental proceeding in the suit said Catherine Miesch had
paid the taxes for 1896 on 87.24 per cent of the property,
and the remaining 12.76 per cent thereof had been sold
for taxes, and that said Charles H. Nix, through his own
action, had caused the title to be clouded and encum-
bered so that he could not give petitioner 12.76 per cent
of the lots in question by a title free and unencumbered.
The petitioner asked the court to appoint a receiver, who
should take possession of the lots and borrow money to
redeem from the tax sale of the 12.76 per cent thereof
and to pay taxes and assessments.

Charles H. Nix answered the petition, denying that
he was the owner of the parcels of land or had any in-
terest except as the husband of the defendant Elizabeth
L. Nix, but that he was ready and willing to join with
his wife in making a good and sufficient deed of 12.76
per cent of said parcels. Elizabeth L. Nix and Catherine
Miesch answered, saying that they were not parties to
the original suit, but were owners of the premises sub-
ject to the claim of petitioner to 12.76 per cent of the
same; that they had always been ready and willing,
and had repeatedly offered, to convey to petitioner or
his assigns 12.76 per cent of the property, and were, and
always had been, ready and willing to perform the de-
cree. Mrs. Nix claimed to be the owner of the property
except the 12.76 per cent thereof owned by petitioner,
subject to the tax title of Mrs. Miesch. Catherine Miesch
alleged that she did not pay the taxes on 12.76 per cent
of the property for 1896 because she believed petitioner
was entitled to that portion and should pay the tax,
which he failed and refused to do.

The court entered an order September 28, 1899, that
an original deed from Elizabeth L. Nix, dated November
4, 1883, purporting to convey the property to Charles H.
Nix, should be separated from the master's report; that
the master should file it for record, and after it was re-

corded should again attach it to his report. The court appointed a receiver to take possession and control of the premises and collect the rents and redeem from tax sale the 12.76 per cent thereof, and keep the property free from tax or tax sales. The receiver took possession. The petition and answers were referred to the master, and it was shown that the defendants to the petition had offered to convey the 12.76 per cent of the property to the petitioner, subject only to the taxes since 1896, when the decree was entered giving the petitioner that share. The master reported that the petitioner was entitled to a further decree upon his petition and the answers thereto, declaring said decree of July 7, 1896, binding upon defendants Elizabeth L. Nix and Catherine Miesch. Objections were filed to the report, and the cause was heard by the court, resulting in the decree from which this appeal is taken. That decree adjudged that the petitioner, John B. Brown, held title in fee simple to the undivided one-third of the premises, and that he was entitled to partition and to have the same set off to him. It was ordered that partition be made accordingly and one-third be set off in severalty to the petitioner and the remaining two-thirds be set off and assigned to Charles H. Nix. Commissioners were appointed to make partition and to set off to Charles H. Nix, for his own use or whoever held title under him, two-thirds, and one-third to the petitioner, and Charles Forster, Charles H. Nix and Elizabeth L. Nix were decreed to be forever foreclosed from any right to the said undivided one-third. The court found that Charles H. Nix was entitled to a lien for the taxes of 1881, 1882 and 1883, and that the receiver had redeemed the undivided 12.76 per cent from certain tax sales, and the money expended, with interest, was a charge against the property, and it was ordered that, the partition being confirmed, the petitioner should deliver to Catherine Miesch the portion set off to Charles H.

Nix, and that nothing in the decree should prejudice her rights under the tax deed.

The petition, on its face, stated that it was filed to obtain the execution of the final decree in the cause and to enforce and carry the same into effect, but, in substance, it was a petition to set aside the decree, and instead of enforcing it by setting off 12.76 per cent of the lots and property to the petitioner, to set off to him one-third, which had never been decreed to him and to which he was not entitled under said original decree. The ground for asking such relief was, that the defendant Charles H. Nix, during the pendency of the suit, had caused or suffered the title to that portion of the property owned by him to be so clouded and encumbered that petitioner could not obtain complete title to the share set off to him. When the original bill was filed the legal title to an undivided two-thirds of the lots was in the defendant Charles Forster, and Charles H. Nix was the real owner. The legal title to the remaining one-third was in Joseph T. Torrence, for the use of petitioner, John B. Brown, and the legal title passed to petitioner. The amended bill offered to convey the undivided one-third and receive seventeen acres, which was 12.76 per cent of the premises, in accordance with the contract. The court granted the relief and decreed that complainant should convey an undivided one-third, or 33⅓ per cent, to defendants, and take back seventeen acres, or 12.76 per cent, in severalty.

The theory of the petition and the decree entered in pursuance of it, and of the argument in support of the decree, is, that because the court could not give to the petitioner a clear title to 12.76 per cent of the property on account of some outstanding rights or title of the defendants Elizabeth L. Nix and Catherine Miesch, it could and should give to the petitioner the title to the entire one-third,—a singular proposition, and apparently not capable of demonstration. Aside from all other ques-

tions, the petition was a mere attempt to re-open and litigate questions finally determined by this court. When the case was here in 1895 the rights of the parties in the land were finally and conclusively determined. It was said that the litigation had then been pending in the courts nearly fourteen years, and as it was evidently a speculative suit it was time it should end, and that after a full and careful consideration of the case the court had determined upon the disposition then made of it. The court ordered that the decree dismissing the bill of Torrence, under which he claimed one-third of the property, should be re-entered, unless he should choose to avail himself of the privilege of filing an amended bill offering to convey to the defendants the title to the one-third and receive the seventeen acres. He elected to file the bill offering to make the conveyance and to take the seventeen acres, and now petitioner proposes to repudiate the offer and to take the one-third, which he will not be permitted to do. The superior court had no power, under the mandate of this court, to re-open the case on the petition and to adjudge an undivided one-third of the property to the petitioner. (*Wadhams* v. *Gay*, 83 Ill. 250; *Buck* v. *Buck*, 119 id. 613; *Lynn* v. *Lynn*, 160 id. 307; *Blackaby* v. *Blackaby*, 189 id. 342.) Everything alleged in the petition, except the non-payment of taxes on the petitioner's own share of the property, was in existence when the amended bill was filed and when the decree was rendered. Every transaction recited in the petition or proved, from which it was claimed the title had been clouded by Charles H. Nix, occurred after this suit was instituted, in 1881, and service was had upon the owners of the property, and before the final decree of July 7, 1896, except said sale of the undivided share for taxes. Furthermore, all the parties who were alleged to have any apparent interest in the property were willing and offered to execute the decree, and there was neither showing of fact or law that a conveyance by them would not give to the petitioner

all that he was entitled to under the decree. It was immaterial whether the whole title was in Charles H. Nix or where it was, if he could procure, and offered to procure, a proper conveyance of the share to which petitioner was entitled. It made no difference that Charles H. Nix could not perform the decree without the consent of his wife and sister, when they did, in fact, consent.

Again, the petition alleged that Charles H. Nix was the real owner; that he purchased the title under the execution sale and caused it to be conveyed to Elizabeth L. Nix; that he procured the premises to be sold for taxes and caused the title derived under said sale to be conveyed to Catherine Miesch and paid the consideration for the tax title, and that these proceedings took place during the pendency of the suit. As to any interest so acquired the court could execute the decree, whether the owners of the titles acquired *pendente lite* from a litigant consented or not. The complainant caused the interest of Charles H. Nix in the premises to be levied on under an execution for costs from this court, and his attorney purchased it at the execution sale. The purchaser only acquired the interest which Nix had in the property and subject to the decree which should be finally rendered in the suit. The title of Charles H. Nix was only in two-thirds of the property, with a right to the remaining one-third upon the performance of the contract and the transfer of 12.76 per cent to petitioner. The title under the execution sale passed to Elizabeth L. Nix, but it was only the interest of Charles H. Nix as it should be subsequently determined in the pending litigation. If Charles H. Nix was the real owner of the tax title held by Catherine Miesch such title would afford no obstacle to the execution of the decree, and if her title was adverse to all the parties it would afford no ground for the petition. The tax sale was of the whole title for taxes of the year 1884, including the one-third interest of the complainant, and the court took the view that the rights of Catherine

Miesch under that tax deed should not be prejudiced by the decree. She alleged in her answer that she was ready and willing to join in a conveyance of the 12.76 per cent as the court might direct, and she testified that she was ready and willing to convey her interest in that share in accordance with the decree; claiming nothing as to that share by virtue of her tax title. All the parties, whatever their interests were, were willing to execute the decree according to its terms, and that should have been done instead of setting it aside and making a new decree as to the titles of the parties.

There was no cause for the appointment of a receiver to take possession of the property for the purpose of redeeming from the sale for taxes of the undivided 12.76 per cent which was ordered set off to the petitioner and upon which he was bound to pay the taxes. Elizabeth L. Nix paid the taxes upon the undivided 87.24 per cent, and the fact that petitioner failed to pay on his interest did not justify a seizure of the property through a receiver. The petitioner should be required to pay the costs of the receivership.

The decree of the superior court entered March 29, 1901, from which this appeal is taken, is reversed and the cause is remanded to that court, with directions to discharge the receiver and require the petitioner to pay all costs occasioned by the receivership, together with the amount necessary to redeem the interest of petitioner from the tax sales and subsequent taxes on such interest, and the costs of the proceedings under his petition, within a time to be fixed by the court, and upon compliance with such order such further proceedings may be had as may be necessary for the execution of the final decree entered on July 7, 1896.          *Reversed and remanded.*